**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Alliance Pipeline L.P., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTIONS FOR PARTIAL SUMMARY** |
| vs. | ) | **JUDGMENT AND IMMEDIATE** |
| | ) | **USE AND POSSESSION** |
| 4.500 Acres of Land, more or less, | ) | |
| in the S/2NW/4 and Sw/4 of Section | ) | |
| 14, Township 162 North, Range 87 | ) | Case No. 4:12-cv-134 |
| West, Renville County, | ) | |
| North Dakota et al., | ) | |
| | ) | |
| Defendants. | ) | |

___

Before the Court are Alliance Pipeline L.P.'s motions for (1) summary judgment, and (2) immediate use and possession filed on October 9, 2012. See Docket Nos. 3 and 7. Alliance Pipeline seeks partial summary judgment as to its right to condemn parcels of property named in this action to construct, operate, and maintain a natural gas pipeline pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq*. The Defendants filed a joint brief in opposition to the motion for summary judgment on November 9, 2012. See Docket No. 34. Alliance Pipeline filed a reply brief on November 13, 2012. See Docket No. 36. Alliance Pipeline also seeks immediate use and possession of the property to be condemned in order to construct the natural gas pipeline. The Defendant filed responsive briefs in opposition to the motion for immediate use and possession on October 26, 2012. See Docket Nos. 10, 12, 14, 16, 18, 20, and 22. Alliance Pipeline filed a reply brief on November 8, 2012. See Docket No. 28. For the reasons set forth below, the Court (1) grants the motion for partial summary judgment; and (2) grants the motion for immediate use and possession.

## I.   BACKGROUND

This is a condemnation action brought by the plaintiff, Alliance Pipeline L.P. Alliance Pipeline is a limited partnership organized and in good standing under the laws of the State of Delaware, and authorized to do business in the State of North Dakota as a foreign limited partnership. See Docket No. 5, p. 1. On September 20, 2012, the Federal Energy Regulatory Commission ("FERC") issued an Order granting Alliance Pipeline a certificate of public convenience and necessity, specifically authorizing the construction, operation, and maintenance of an approximately 79-mile-long, 12-inch diameter, underground natural gas pipeline and related facilities and appurtenances known as the Tioga Lateral Project ("Project"). See Docket No. 1-2. The Project will provide infrastructure to transport 106 million cubic feet (mmcf) of natural gas and natural gas liquids per day from an existing processing plant operated by Hess Corporation near Tioga, North Dakota, to a location near Sherwood, North Dakota, where it will connect to Alliance Pipeline's existing mainline pipeline. See Docket No. 5, pp. 2-3. Alliance Pipeline's mainline pipeline is a 36-inch diameter pipeline that transports natural gas and natural gas liquids from production sources in Canada and North Dakota to delivery points in the midwestern United States, including Alliance Pipeline's primary delivery point near Joliet, Illinois, located 50 miles southwest of Chicago. See Docket No. 5, p. 3.

Alliance Pipeline has engaged in negotiations with the affected landowners along the route of the Tioga Lateral Project to acquire easements to construct and operate the pipeline. See Docket No. 5, p. 3. The company has reached agreements with most of the affected property owners to acquire the necessary easements. However, Alliance Pipeline has been unable to secure all of the easements needed through negotiations. The company initiated this action to condemn the

remaining easements along the route of the Project. A description of the easements sought in this action was filed with the complaint. See Docket Nos. 1-1; 1-3; and 5. The easements sought are all within the route approved by the FERC for the Tioga Lateral Project in the certificate of public convenience and necessity. See Docket No. 5, p. 3. Alliance Pipeline contends the Project will require a 50-foot-wide permanent easement for construction, operation, and maintenance, with an additional 25-foot-wide temporary easement for workspace adjacent to either or both sides of the permanent easement to construct the pipeline, and additional temporary easements for workspace for special construction conditions, where necessary, along with the rights of ingress and egress. See Docket No. 5, p. 3. Special construction conditions that will require additional temporary workspace include areas where the pipeline will be bored under roadways, cross waterways and wetlands, and lands with particularly steep grades. See Docket No. 5, p. 3.

In the order issuing the certificate of public convenience and necessity, the FERC determined that the Tioga Lateral Project will fill a critical need by facilitating the transportation of liquids-rich gas produced from the Bakken shale formation in western North Dakota and eastern Montana, to major markets in the Chicago area. See Docket No. 1-2, p. 5. The Project will provide downstream consumers with increased access to clean burning energy and reduce "flaring"—the burning of natural gas produced as a by-product of oil production at the well sites. See Docket No. 5, pp. 4-5. In addition, the Project will provide the unique ability to transport the Bakken formation's liquids-rich natural gas to market, without the need for significant additional above-ground infrastructure in North Dakota, including processing plants. Generally, natural gas liquids—products like propane, butane, and ethane—are separated from the natural gas, which is primarily methane, at processing plants near the source of production and shipped separately. The shortage of processing plants, and

3

the high cost of constructing additional plants, has limited the ability of producers to ship gas out of North Dakota, and contributed to the prevalence of flaring. According to the North Dakota Industrial Commission, nearly one-third of the natural gas produced in North Dakota is flared. The Tioga Lateral Project and Alliance Pipeline's mainline pipeline have the ability to transport the liquids entraining in the gas stream to an existing processing plant near Chicago, where the gas and liquids can be effectively separated and delivered to market. See Docket No. 5, pp. 3-5.

Producers and shippers of natural gas and natural gas liquids in the Williston Basin have expressed support for the Tioga Lateral Project. See Docket No. 5, p. 4. Of the total shipping capacity of 106 mmcf per day, Alliance Pipeline has obtained a "firm commitment" from Hess Corporation to ship approximately 61.5 mmcf per day for ten years. See Docket Nos. 5, p. 4; 5-2. EOG Resources, Inc., and its subsidiary, Pecan Pipeline (North Dakota), Inc., have also publicly declared support for the Project. See Docket No. 5-2, p. 5. The Project will enable these producers and shippers to increase their shipping capacity, potentially reducing the need for flaring, and providing a method for shipping the Williston Basin's liquids-rich gas to market without constructing additional processing plants. See Docket No. 5, pp. 4-5.

Based upon an expected July 1, 2013, in-service date, Alliance Pipeline and its contractors have made significant investments in preparation for construction of the Tioga Lateral Project, including commitments for the purchase of pipe for the Project and other items requiring long lead-times. Similarly, Hess Corporation and other potential shippers have developed their drilling and marketing plans in reliance on the Project. See Docket No. 5, p. 6. Delays in completion of the Project would negatively affect those plans and place the significant investments made by Alliance Pipeline and its contractors and shippers at risk.

4

Delays in the completion of the Project could also negatively impact post-construction restoration of the affected properties, and increase the cost of the Tioga Lateral Project and the time required to complete construction. See Docket No. 5, pp. 7-8. Construction of the Project will be completed in several phases. The first phase will involve stripping and stockpiling the topsoil from the trench area and, depending on the nature of the property, additional areas within the easements. Alliance has committed to completing topsoil removal before the ground freezes, but any delay in acquiring easements could make that impossible. See Docket No. 5, p. 7. If Alliance Pipeline is unable to strip and stockpile all the topsoil before it freezes, it will add significant cost to the construction process and make it more difficult to restore the soil to its preconstruction condition in a timely fashion.

Pipeline construction is a continuous, mass production procedure, similar to a moving assembly line. See Docket No. 5, p. 7. Within each construction crew are smaller specialized crews, such as the staking crew, grading crew, ditching crew, welding crew, and so forth. To maximize the efficiency of the construction process, these specialized crews need to be able to follow each other down the length of the easements, performing each construction operation in a sequential manner. For this reason, access to the entire route of the Project is required for the construction process to proceed as efficiently and expeditiously as possible. If Alliance Pipeline does not have access to the entire route of the Project, it must either have crews "stand-by" (i.e., stop work and wait) until the necessary easement can be acquired, or "move-around" the parcel where Alliance Pipeline has not yet acquired the necessary easement. See Docket No. 5, pp. 7-8. Either approach would significantly increase the costs of construction and would significantly delay completion of the Project.

Alliance Pipeline's contractor for the Tioga Lateral Project costs approximately $500,000 per day. See Docket No. 5, p. 6. Alliance Pipeline has also contracted with a vendor near Tioga to provide housing for the construction crews for an additional $280,000 per week, or $40,000 per day. Accordingly, each day that the construction crews must stand-by or move equipment around a particular tract of land, as much as $540,000 will be added to the total cost of the Project.

In order to complete construction in a timely and efficient manner, Alliance Pipeline contends it needs to have access to the entire route of the Tioga Lateral Project as soon as possible and before the ground freezes. See Docket No. 5, p. 8. The company contends that delays in construction and completion of the Project caused by the lack of access will not only significantly and irreparably harm Alliance Pipeline, but will also harm natural gas producers, project suppliers, consumers of the natural gas transported, and other landowners along the Project route. According to declarations that accompany Alliance Pipeline's motions, the impact to the lands in question will be no greater if immediate access is granted for purposes of constructing the Project, and the impacts of construction may be less, particularly considering that immediate access should avoid the need for stripping topsoil after freeze up. See Docket No. 5.

On October 9, 2012, Alliance Pipeline filed motions for (1) partial summary judgment as to its right to condemn easements along the route of the Tioga Lateral Project pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.*; and (2) immediate use and possession of the condemned property to construct and operate the natural gas pipeline. See Docket Nos. 3 and 7. The Defendants filed a joint brief in opposition to the motion for summary judgment on November 9, 2012. See Docket No. 34. Alliance Pipeline filed a reply brief on November 13, 2012. See Docket No. 36. The Defendants filed responsive briefs in opposition to the motion for immediate use and possession on

October 26, 2012.  See Docket Nos. 10, 12, 14, 16, 18, 20, and 22.  Alliance Pipeline filed a reply brief on November 8, 2012.  See Docket No. 28.

## II. LEGAL DISCUSSION

### A. PARTIAL SUMMARY JUDGMENT

Alliance Pipeline seeks partial summary judgment as to its right to condemn certain parcels of property and acquire easements to construct, operate, and maintain the Tioga Lateral Pipeline pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et. seq.*, and the certificate of public convenience and Necessity.

In 1977, the United States Congress created FERC, and delegated to FERC regulatory authority over the interstate transportation and sale of natural gas, as well as natural gas companies. 42 U.S.C. § 7171.  Congress has determined "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."  15 U.S.C. § 717(a).  Pursuant to the Natural Gas Act, a natural gas company may condemn private land in order to construct and operate a natural gas pipeline.  15 U.S.C. § 717f(h) provides as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall

> conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C.A. § 717f(h) (emphasis in original). 15 U.S.C. § 717f(h) permits a natural gas company to condemn property if: (1) the company is a "holder of a certificate of public convenience and necessity"; and (2) the company is unable to agree with property owners as to "the compensation to be paid for" necessary easements to "construct, operate, and maintain a pipe line." Alliance Pipeline contends it has authority to condemn the properties named in this action based upon 15 U.S.C. § 717f(h), as a holder of a certificate of public convenience and necessity.

Alliance Pipeline filed the certificate of public convenience and necessity issued by FERC along with the complaint. See Docket No. 1-2. The certificate authorizes the construction, operation, and maintenance of the Tioga Lateral Project. See Docket No. 1-2, pp. 13-14. Many of the necessary easements to construct and operate the pipeline have been acquired through settlement agreements with affected property owners, but Alliance Pipeline was unable to reach agreements with property owners to acquire all of the necessary easements. See Docket No. 5, p. 3. The Court finds that Alliance Pipeline clearly has authority to condemn property to acquire easements along the Tioga Lateral Project route pursuant to 15 U.S.C. § 717f(h), as FERC issued the certificate of public convenience and necessity for the Project and, despite efforts to negotiate agreements with affected property owners, Alliance Pipeline has been unable to acquire the easements by contract.

Several Defendants contend that Alliance Pipeline does not have the authority to condemn their property because: (1) Alliance Pipeline has not complied with the rules of federal procedure; (2) Alliance Pipeline failed to comply with state law; and (3) the FERC certificate of public

8

convenience and necessity was improvidently issued. The Court will address each of these concerns.

### 1) COMPLIANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURE

The Defendants contend that Alliance Pipeline is not entitled to condemn their property because it failed to comply with the Federal Rules of Civil Procedure by not serving the Defendants with a summons. A summons is not required in this condemnation action. A plaintiff in a condemnation action must prepare a notice of condemnation and deliver it to the clerk of court. Fed.R.Civ.P. 71.1(d)(1). Thereafter, the notice of condemnation must be personally served on each defendant whose address is known and who resides in the United States. Fed.R.Civ.P. 71.1(d)(3). "Delivering the notice to the clerk and serving it has the same effect as serving a summons under Rule 4 [of the Federal Rules of Civil Procedure]." Fed.R.Civ.P. 71.1(d)(4). The record reveals that Alliance Pipeline delivered a notice of condemnation to the Clerk and personally served the Defendants whose address was discovered and who live in the United States. See Docket Nos. 2 and 36-1. The Court finds the Defendants' argument concerning a lack of summons is without merit as no summons is required in this condemnation action.

### 2) COMPLIANCE WITH STATE LAW

The Defendants contend that Alliance Pipeline must comply with an assortment of state laws. The Defendants' argument is based on language in 15 U.S.C. § 717f(h), which provides in relevant part that "[t]he practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in

similar action or proceeding in the courts of the State where the property is situated[.]" 15 U.S.C. 717f(h). Although this provision appears to require Alliance Pipeline to conform with state practice and procedure, courts have uniformly held that Rule 71.1 of the Federal Rules of Civil Procedure establishes the controlling procedure for condemnation actions in federal district court, superceding contrary federal law.

Rule 71.1(a) provides as follows:

**(a)** **Applicability of Other Rules.** These rules govern proceedings to condemn real and personal property by eminent domain, except as this rule provides otherwise.

Fed.R.Civ.P. 71.1(a). The Advisory Committee Notes provide that Rule 71.1 "affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain . . . and supplants all statutes prescribing a different procedure." Courts have consistently interpreted Rule 71.1 to supercede contrary procedure in federal statutes, including 15 U.S.C. § 717f(h).

The United States Supreme Court has noted in dicta that Rule 71.1 supercedes contrary federal law. The Supreme Court explained "[t]he adoption in 1951 of Rule 71A [the predecessor of Rule 71.1] capped an effort to establish a uniform set of procedures governing all federal condemnation actions." Kirby Forest Indus. v. United States, 467 U.S. 1, 4 n.2 (1984). Interpreting a federal statute similar to the Natural Gas Act, which authorized condemnation only in conformity with state practice and procedure, the Supreme Court stated the conformity requirement was "clearly repealed" by Rule 71.1 United States v. 93.970 Acres of Land, 360 U.S. 328, 333 n.7 (1959).

United States Courts of Appeals have similarly held that Rule 71.1 supercedes the provision in 15 U.S.C. § 717f(h) which requires conformity with state practice and procedure. N. Border Pipeline Co. v. 64.111 Acres of Land in Will Cnty., Ill., 344 F.3d 693, 694 (7th Cir. 2003);

S. Natural Gas Co. v. Land, Cullman Cnty., 197 F.3d 1368, 1372-75 (11th Cir. 1999). The Seventh Circuit Court of Appeals explained:

> The Rules of Civil Procedure, which are established by the Supreme Court under the Rules Enabling Act, cannot "repeal" any statute; the Constitution does not give the Judicial Branch any power to repeal laws enacted by the Legislative Branch. But Congress may itself decide that procedural rules in statutes should be treated as fallbacks, to apply only when rules are silent. And it has done just this, providing in what has come to be called the supersession clause of the Rules Enabling Act that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). Any doubts about the force and validity of the supersession clause were laid to rest in Henderson v. United States, 517 U.S. 654, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). Thus Rule 71A(h) [which is now Rule 71.1] prevails: its nationally uniform approach conflicts with the conformity-to-state-practice approach of [15 U.S.C.] § 717f(h), and under § 2072(b) the statutory rule "shall be of no further force or effect."

N. Border Pipeline Co., 344 F.3d at 694; see also S. Natural Gas Co., 197 F.3d at 1372-75 (finding Rule 71.1 supersedes the Natural Gas Act's requirement to follow state practice and procedure) Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa Cnty., 550 F.3d 770, 776 n.7 (9th Cir. 2008) ("While Rule 71.1 cannot provide additional substantive rights under the [Natural Gas Act], it seems clear that it does supercede that part of the § 717f(h) which requires the district court to 'conform as nearly as may be with the practice and procedure in similar action or proceedings in the courts of the State where the property is situated.'"). The Court finds that Rule 71.1 of the Federal Rules of Civil Procedure sets forth the applicable procedure for this condemnation action, and supercedes the contrary provisions in 15 U.S.C. § 717f(h) requiring conformity with state practice and procedure. Therefore, the Defendants' arguments regarding Alliance Pipeline's non-compliance with North Dakota law are rejected.

11

### 3) COLLATERAL ATTACKS ON FERC'S ORDER

The Defendants also contend that FERC improvidently issued the certificate of public convenience and necessity authorizing the Tioga Lateral Project. A review of a certificate of public convenience and necessity is limited in a condemnation action under 15 U.S.C. § 717f(h). Williams Natural Gas Co. v. City of Okla. City, 890 F.2d 255, 260-64 (10th Cir. 1989), cert. denied, 497 U.S. 1003 (1990). "[A] challenger may not collaterally attack the validity of a prior FERC order" in federal district court. Id. at 262 (original citation omitted). Rather, challenges attacking the propriety of a certificate of public convenience and necessity must first be brought to FERC upon an application for rehearing. 15 U.S.C. § 717r(a). Thereafter, appeals may be brought to a United States Court of Appeals. 15 U.S.C. § 717r(b). In a condemnation action, a district court lacks jurisdiction to hear collateral attacks on certificates issued by FERC. See Williams Natural Gas Co., 890 F.2d at 262 ("Judicial review . . . is exclusive in the courts of appeals once the FERC certificate issues."); Transcon. Gas Pipe Line Corp. v. 118 Acres of Land, 745 F.Supp. 366, 372 (E.D. La. 1990) (stating "review of FERC orders are to be made only to United States Circuit Courts of Appeal"). A district court's review in a condemnation action is limited to determining whether (1) the certificate of public convenience and necessity is "facially valid"; and (2) the property sought to be condemned is within the scope of the certificate. USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tenn., 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998) (citing Williams Natural Gas Co., 890 F.2d at 262; Tenn. Gas Pipeline Co. v. 104 Acres in Providence Cnty., 749 F.Supp. 427, 430 (D.R.I. 1990)).

The Defendants do not contend the certificate of public convenience and necessity held by Alliance Pipeline is invalid on its face, or that their property falls outside the scope of FERC's order

approving the Tioga Lateral Project. The Defendants concede "that some form of a FERC certificate is held by Alliance," but contend the FERC's order was improvidently issued for various reasons. See Docket No. 34, p. 6. The Court finds that Congress conferred to the United States Courts of Appeals the exclusive jurisdiction to review FERC's orders under the Natural Gas Act. Thus, the Court finds that it lacks jurisdiction to address the Defendants' collateral attacks on the certificate of public convenience and necessity issued by FERC.

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. The Court finds that Alliance Pipeline has demonstrated that it has authority to exercise the right of eminent domain pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h), and that the certificate of public convenience and necessity authorizing the Tioga Lateral Project. The Court grants Alliance Pipeline's partial motion for summary judgment, and issues an order of condemnation for the properties named in this action.

### B. IMMEDIATE USE AND POSSESSION

Alliance Pipeline also moves for immediate use and possession of the condemned property along the route of the Tioga Lateral Project. The motion is made on the grounds that Alliance Pipeline will suffer irreparable harm if it does not acquire immediate access to the entire route of the pipeline. Alliance Pipeline contends the Court has inherent equitable power to grant the motion.

This Court has granted immediate use and possession of property in similar cases based on its inherent equitable powers. N. Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170 (D.N.D. 1981); Williston Basin Interstate Pipeline Co. v. Easement and Right-of-Way Across .152 Acres of Land, No. A1-03-66, 2003 WL 21524816 (D.N.D. June 3, 2003). It is well-established that

13

district courts in a number of jurisdictions have similarly granted immediate possession to natural gas companies that have demonstrated the right to condemn property under the Natural Gas Act, as Alliance Pipeline has done in this case. See Nw. Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way, 197 F. Supp. 2d 1241, 1245 (E.D. Wash. 2002) ("where there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, 210 F. Supp. 2d 976, 979 (N.D. Ill. 2002) (immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); N. Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (same); Tenn. Gas Pipeline Co. v. New England Power, Inc., 6 F. Supp. 2d 102, 104 (D.Mass.1998) (holding district court has inherent equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule); USG Pipeline Co., 1 F. Supp. 2d at 825–26 (granting immediate possession where pipeline company would suffer substantial financial detriment if construction were delayed); Kern River Gas Transmission Co. v. Clark Cnty, 757 F.Supp. 1110, 1117 (D.Nev. 1990) (granting motion for immediate occupancy); Humphries v. Williams Natural Gas Co., 48 F. Supp. 2d 1276, 1280 (D.Kan. 1999) ("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the NGA]."); Rivers Electric Co., Inc. v. 4.6 Acres of Land, 731 F.Supp. 83, 87 (N.D. N.Y. 1990) (granting immediate possession under a statute similar to the NGA).

In the order issuing the certificate of public convenience and necessity, FERC determined that the Tioga Lateral Project will fill a critical need by facilitating the transportation of liquids-rich gas produced from the Bakken shale formation in western North Dakota and eastern Montana, to

major markets in the Chicago area. See Docket No. 1-2, p. 5. As outlined above, the Project will provide downstream consumers with increased access to clean burning energy. See Docket No. 5, pp. 4-5. The Project will provide significant benefits to producers and shippers of natural gas from the Bakken by increasing shipping capacity, potentially reducing the need for flaring, and providing a method for shipping the Williston Basin's liquids-rich gas to a market without constructing additional processing plants. See Docket No. 5, pp. 4-5. Delays in the completion of the Project could negatively impact post-construction restoration of the affected properties, and increase the cost and the time required to complete construction. See Docket No. 5, pp. 7-8. Alliance has committed to completing topsoil removal before the ground freezes. See Docket No. 5, p. 7. However, if Alliance Pipeline is unable to strip and stockpile all the topsoil before it freezes, it will add cost to the construction process and make it more difficult to restore the soil to its preconstruction condition in a timely fashion.

The record before the Court reveals that access to the entire route of the Project is required for the construction process to proceed in an efficient and expeditious manner. If Alliance Pipeline does not have access to the entire route of the Project, it must either have crews "stand-by" until the necessary easement can be acquired, or "move-around" the parcel where Alliance Pipeline has not yet acquired an easement. See Docket No. 5, pp. 7-8. Either approach would significantly increase costs and delay completion of the Project. Each day that the construction crews must stand-by or move equipment around a particular tract of land will add as much as $540,000 to the total cost of the Project.

The Court has carefully considered the evidence submitted by the parties. As determined above, Alliance Pipeline has established that it has a right to condemn the property in question

pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h). The record before the Court reveals that Alliance Pipeline has met the equitable considerations needed to warrant immediate use and possession of the land at issue. The Court expressly finds that there is urgency and a need on behalf of Alliance Pipeline for the immediate possession. Alliance Pipeline has demonstrated that it would suffer immediate and irreparable harm if construction crews do not have immediate access to the entire route of the Tioga Lateral Project. The Court further finds that it would be in the best interests of the public to grant immediate possession of the properties to Alliance Pipeline and that the public interest will be prejudiced by any delay in granting such possession. In addition, Alliance Pipeline has committed to deposit the sum of $3,000 per acre of land to be condemned with the Clerk as a condition of immediate use and possession.

The Court concludes that Alliance Pipeline has clearly demonstrated that the necessary equitable considerations weigh in favor of granting immediate use and possession of the land in question. As such, the Court issues the following **ORDER**:

> (1) That the plaintiff, Alliance Pipeline L.P., shall have immediate possession of the specific tracts of land identified in the condemnation complaint for the purpose of constructing a natural gas pipeline transportation system, i.e., the Tioga Lateral Project;
>
> (2) That Alliance Pipeline L.P. shall take immediate possession of the land at issue as identified in the condemnation complaint upon depositing with the Clerk of the District Court the sum of $3,000 per acre of land, in cash or surety bond as a condition of immediate use and possession;
>
> (3) That Alliance Pipeline L.P. shall have such authority under this Court's award of immediate possession as it would have if the landowners had granted an easement and right-of-way.

The Court is very cognizant of the interests of the landowners and their need for assurances that the land will be reasonably restored to its original contour and condition, just as it was before

the commencement of the pipeline construction project. Alliance Pipeline has made repeated assurances that the land will be reasonably restored. Based upon such assurances, the Court further finds that an order granting Alliance Pipeline immediate possession is warranted and appropriate under the circumstances.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Alliance Pipeline's motion for partial summary judgment (Docket No. 3); and **GRANTS** Alliance Pipeline's motion for immediate use and possession (Docket No. 7).

**IT IS SO ORDERED**,

Dated this 21st day of November, 2012.

                                                 _/s/ Daniel L. Hovland_
                                                 Daniel L. Hovland, District Judge
                                                 United States District Court